MARTIN J. BRILL (Calif. Bar No. 53220) mjb@lnbrb.com
DAVID B. GOLUBCHIK (Calif. Bar No. 185520) dbg@lnbrb.com
KRIKOR J. MESHEFEJIAN (Calif. Bar No. 255030) kjm@lnbrb.com
**LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.**
10250 Constellation Blvd., Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244

*Proposed Reorganization Counsel for Chapter 11 Debtor and Debtor-in-Possession*

Bruce T. Beesley (NV Bar No. 1164) bbeesley@lrlaw.com
LEWIS AND ROCA LLP
Bank of America Plaza
50 West Liberty Street, Suite 410
Reno, Nevada 89501
Telephone: (775) 823-2900

*Proposed Co-Counsel for Chapter 11Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>ASTRATA GROUP INCORPORATED,<br><br>      Debtor and Debtor-in-Possession. | Case No. 09-52652-GWZ<br>Chapter 11<br><br>Adv No. 09-adv-_05074_-GWZ |
| ASTRATA GROUP INCORPORATED,<br><br>      Plaintiff,<br><br>      v.<br><br>VISION OPPORTUNITY CHINA, LP;<br>VISION OPPORTUNITY MASTER FUND,<br>LTD; VISION CAPITAL ADVANTAGE<br>FUND, LP; AND VISION CAPITAL<br>ADVISORS, LLC<br><br>      Defendants. | **DECLARATION OF TIM HARMON IN SUPPORT OF PLAINTIFF'S MOTION FOR (1) TEMPORARY RESTRAINING ORDER ENJOINING PREFERRED SHAREHOLDER FROM CONVERTING STOCK AND REPLACING BOARD MEMBERS; (2) ORDER HOLDING THAT ANY SUCH ACTION WOULD BE IN VIOLATION OF THE AUTOMATIC STAY; AND (3) HEARING ON ISSUANCE OF INJUNCTION TO PREVENT STOCK CONVERSION AND BOARD REPLACEMENT DURING THE COURSE OF THIS CHAPTER 11 CASE** |

1

I, Tim Harmon, hereby declare:

1.    I am a member of Traditions LP ("Traditions") and trustee to the Harmon 1000 Descendents Trust (the "Trust"). Traditions and the Trust beneficially own Fame Trading ("Fame").

2.    Fame is a single purpose enterprise, chartered under BVI (British Virgin Island) law that is managed and controlled in Singapore by Mohan Abraham Advocates & Solicitors.

3.    Traditions' investments have been in a variety of industry-segments, e.g. communications, manufacturing, private equity management, real estate and agriculture. Traditions' investments have been global in scope, with emphasis in Russia, Latin America, and Asia, and are invariably structured through single purpose enterprises like Fame.

4.    I am an authorized representative of Fame and have personal knowledge of the facts set forth herein.

5.    I have been primarily responsible for negotiating a restructuring and financing agreement with Astrata Group Incorporated ("AGI" or the "Debtor") and its subsidiary, referred to in AGI's pleadings as Asia Pacific. I have also spoken to representatives of Vision throughout the course of AGI's attempts to restructure its debt, both prior to AGI's bankruptcy filed and after the bankruptcy was filed.

6.    Fame has arrived at the determination that it will not provide financing to the Debtor or Asia Pacific if existing management is allowed to be replaced during the course of the Debtor's chapter 11 case.

7.    Additionally, if the Debtor's existing management is replaced, Fame will seek to convert its existing Supplemental Debentures with Asia Pacific into the equity of Asia Pacific. Attached hereto as Exhibit "A" is a true and complete copy of Fame's Supplemental Debentures with Asia Pacific.

2

8.    Fame will evaluate all aspects of the Debtor's and Asia Pacific's organization if and possibly when the Debtor confirms its Plan of reorganization.

I declare under penalty of perjury on the laws of the United States of America that the foregoing is true and correct. Executed this 6th day of October at _Middleburg, VA_.

_____
TIM HARMON

3

**EXHIBIT A**

Dated this 28th day of August 2009

BETWEEN

**FAME TRADING LTD**.

as Lender

And

**ASTRATA (ASIA PACIFIC) PTE. LTD.**

as Borrower

========================================================

**SUPPLEMENTAL FACILITY AGREEMENT**

========================================================

**ABRAHAM**

Advocates and Solicitors

19 Keppel Road

#09-05, Jit Poh Building

Singapore 089058

EXECUTION COPY

THIS **SUPPLEMENTAL FACILITY AGREEMENT** ("**Supplemental Facility Agreement**") is made the 28th day of August 2009 **BETWEEN**:-

(A)  **FAME TRADING LTD**, a company incorporated in British Virgin Islands and having its registered office at Akara Building, 24 De Castro Street, Wickhams Cay 1, Road Town, Tortola, British Virgin Islands ("**Lender**") ; and

(B)  **ASTRATA (ASIA PACIFIC) PTE LTD**, a company incorporated in the Republic of Singapore and having its registered office at 135 Joo Seng Road #02-01, Singapore 368363 ("**Borrower**").

(collectively "**the Parties**")

**RECITAL:-**

(A)  The Parties entered into a Facility Agreement dated the 18 May 2009 ("**Facility Agreement**") whereby the Lender agreed to advance a Facility of up to US$8,500,000 to the Borrower on the terms and conditions stated therein.

(B)  Following negotiations between the Parties, the Lender is now prepared to extend and increase the Facility to up to US$16,000,000 upon the terms and conditions contained hereinafter and as such the Parties agree that the Facility Agreement be varied to reflect the increased Facility and the revised terms and conditions.

**IT IS HEREBY AGREED** as follows:

1.   **DEFINITIONS**
     This Supplemental Facility Agreement is supplemental to the Facility Agreement. Save as expressly amended, deleted or added to by this Supplemental Facility Agreement, the terms and conditions of the Facility Agreement shall remain in full force and effect. The terms defined in the Facility Agreement shall have the same meaning in this Supplemental Facility Agreement unless otherwise provided for herein:-

EXECUTION COPY

"**Facility Repayment Date**" means 31st August 2010;

"**Redeemable Preference Shares**" means the shares to be issued pursuant to Clause 5 with the rights and restrictions described in Clause 3;

"**Supplemental Debentures**" means;

(i)     the supplemental debenture to be executed between the Lender and the Borrower; and

(ii)    the supplemental debenture to be executed between the Lender and the Second Chargor;

to reflect the amendments to the Debentures as required under the terms of this Supplemental Facility Agreement

"**Preference Shareholders**" mean the persons to whom the Redeemable Preference Shares shall be issued pursuant to Clause 4.

## 2.     INCREASED FACILITY

The Facility shall be increased up to US$16,000,000 inclusive of the disbursements that have been made up to the date of this Supplemental Facility Agreement and disbursements shall continue to be made by the Lender to the Borrower pursuant and subject to the provisions of the Facility Agreement and of this Supplemental Facility Agreement.

## 3.     CONDITIONS

3.1    Within 2 days from the execution of this Supplemental Facility Agreement the Borrower shall amend its articles of association and cause the Second Chargor to amend its articles of association whereby:-

(a)    the respective companies are permitted to create a class of Redeemable Preference Shares which will have the following restrictions and confer upon the Preference Shareholder the following rights:

(i)     the Preference Shareholders shall be entitled to vote at all

3

meetings of members of the respective companies;

(ii)     the Preference Shareholders shall not be entitled to dividends;

(iii)    on the liquidation of the Lender or the Second Chargor (as the case maybe), the Preference Shareholder of the relevant company, shall have the first right to be repaid from the surplus assets the amount for which the Redeemable Preference Shares are subscribed;

(iv)    the Preference Shareholder of the Borrower or the Second Chargor (as the case maybe) shall be entitled to appoint 3 persons to the board of directors of the relevant company (and to replace them from time to time);

(v)     the consent of the Preference Shareholder of the relevant company shall be required:-

    (aa)    to carry any motion that is proposed to amend the articles of association of the Borrower or the Second Chargor (as the case maybe) so as to increase or reduce the number of persons that shall constitute the board of directors;

    (bb)    to remove or replace the Chief Executive Officer or the Chief Financial Officer of either company or any director that is nominated to the board by the Preference Shareholder; and

    (cc)    the issuance of new shares (other than those contemplated by this Supplemental Facility Agreement) by the Borrower or the Second Chargor (as the case maybe);

(vi)    the relevant company shall be entitled to redeem the Preference Shares at the price at which the shares are subscribed for when either the Facility and all monies owing in connection therewith are repaid or such portion of the Facility is converted into ordinary shares in the capital of the Borrower to the extent that the Lender

4

EXECUTION COPY

shall own upon such conversion no less than 75% of the voting shares in the capital of the Borrower;

(b)     the respective boards of directors of the Borrower and the Second Chargor shall be reconstituted so that each board shall comprise 5 persons; 1 of whom shall be Anthony Harrison (British Passport No. 800960337), Chairman and CEO of the Holding Company, the other of whom shall be Martin Euler (British Passport No. 706260232), the Chief Financial Officer of the Holding Company, and the remaining 3 shall be such persons as the Lender shall appoint and substitute from time to time.

## 4.     CONDITIONS PRECEDENT FOR FURTHER DISBURSEMENTS

Further disbursement of the Facility shall be made available to the Borrower subject to the Lender receiving in form and substance satisfactory to it:-

(i)      duly executed Supplemental Debentures;

(ii)     the term sheet duly approved and signed by the Holding Company and the Borrower;

(iii)    certified true copies of the resolutions passed by the boards of directors of the Borrower and the Second Chargor approving the terms and conditions of this Supplemental Facility Agreement and the Supplemental Debentures and the execution of the aforesaid documents; and

(iv)     any other documents the Lender might reasonably require.

## 5.     SUBSCRIPTION OF PREFERENCE SHARES

Within 3 days after the execution of this Supplemental Facility Agreement and the Supplemental Debentures, the Lender shall subscribe for 100 Redeemable Preference Shares at S$1/- each in the capital of the Lender and the Second Chargor.

## 6.    APPOINTMENT OF DIRECTORS

Within 1 day after the Lender shall have subscribed for the Redeemable Preference Shares in the capital of the Lender and the Second Chargor, the said company shall appoint the persons described in Clause 3.1 (b) to their respective board of directors upon being furnished the names of the 3 persons to be nominated by the Lender.

## 7.    CONVERTIBILITY OF THE FACILITY

The Lender shall at any time by written notice delivered to the Borrower be entitled to require the company to allot and issue to the Lender in exchange for and in full satisfaction of the Facility disbursed by the Lender to the Borrower and outstanding at the date of the notice fully paid ordinary shares in the capital of the Borrower at the rate of 1 ordinary share for every US$0.94 so disbursed. This right of convertibility shall be restricted to no more than US$8,500,000 of the Facility. The Borrower shall upon the expiration of one week from the date of such notice issue to the Lender the number of shares the Lender shall be so entitled.

## 8.    COMMITMENT FEE

The Borrower shall within 10 days from the date of the execution of this Supplemental Facility Agreement and the Supplemental Debentures pay to the Lender a commitment fee equal to 5% of US$16,000,000.00.

## 9.    PRE-PAYMENT FEE

In the event that the Facility or any portion thereof is repaid prior to the Facility Repayment Date, the Lender shall be entitled to a prepayment fee of 5% of the Facility (or any portion thereof so repaid) such fee shall be paid at the same time as the prepayment.

## 10.    ASSIGNMENT

10.1   This Supplemental Facility Agreement shall benefit and be binding on the Parties, their permitted assignees and their respective successors.

10.2   The Borrower may not assign or transfer any of its rights or interests under this Supplemental Facility Agreement and the Supplemental Debentures.

10.3   The Lender may assign all or part of its rights or transfer all or part of its interests under this Supplemental Facility Agreement and the Supplemental Debentures without the consent of the Borrower. The assignee or transferee shall be and be treated as a party for all purposes of this Supplemental Facility Agreement and the Supplemental Debentures and be entitled to the full benefit of this Supplemental Facility Agreement and the Supplemental Debentures as it if were an original party in respect of the rights and interests assigned or transferred to it.

## 11.   GOVERNING LAW AND JURISDICTION

This Supplemental Facility Agreement shall be governed by and construed in accordance with the laws of Singapore. The courts in Singapore have non-exclusive jurisdiction to settle any dispute arising out of or in connection with this Supplemental Facility Agreement including disputes regarding the existence, validity or termination of this Supplemental Facility Agreement.

## 12.   SET-OFF AND WITHHOLDINGS

All sums payable by the Borrower to the Lender pursuant to this Supplemental Facility Agreement shall be paid in full, free of any restriction or condition, without set-off or counter-claim and without any deduction or withholding for or on account of any taxes. All such taxes shall be borne and paid by the Borrower.

## 13.   COSTS

All costs and charges (including legal expenses) of the Lender incurred in connection with this Supplemental Facility Agreement and the Supplemental Debentures and all administration costs and charges of the Lender shall be on the account of and paid by the Borrower.

## 14.   TIME IS OF ESSENCE

Time is of the essence of this Supplemental Facility Agreement but no failure to exercise and no delay in exercising, on the part of the Lender, any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or

EXECUTION COPY

partial exercise of any right, power or privilege preclude any other or further exercise thereof, or the exercise of any other power of right. The rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law.

(This space is intentionally left blank)

EXECUTION COPY

**IN WITNESS WHEREOF**, the Parties have executed and delivered this Supplemental Facility Agreement on the day and year first above written.


**The Lender**

Signed by Mohan Raj Abraham    )
Director, for and on behalf of    )
**FAME TRADING LTD.**    )
in the presence of:


**The Borrower**

Signed by    )
for and on behalf of    )
**ASTRATA (ASIA PACIFIC)**    )
**PTE. LTD**.    )
in the presence of:    )

9

Dated this 28th day of August 2009

BETWEEN

**ASTRATA (ASIA PACIFIC) PTE. LTD.**

as Chargor

And

**FAME TRADING LTD.**

as Lender

==============================================================

**SUPPLEMENTAL DEBENTURE**

==============================================================

**ABRAHAM**

Advocates and Solicitors

19 Keppel Road

#09-05, Jit Poh Building

Singapore 089058

EXECUTION COPY

THIS **SUPPLEMENTAL DEBENTURE ("Supplemental Debenture")** is made the 28th day of August 2009 **BETWEEN:-**

(A)     **ASTRATA (ASIA PACIFIC) PTE. LTD.** (the "**Chargor**", which expression shall unless the context otherwise requires, include its successors and permitted assigns), a company incorporated in the Republic of Singapore and having its registered office at 135 Joo Seng Road #02-01, Singapore 368363; and

(B)     **FAME TRADING LTD.** (the "**Lender**", which expression shall unless the context otherwise requires, include its successors and permitted assigns), a company incorporated in British Virgin Islands and having its registered office at Akara Building, 24 De Castro Street, Wickhams Cay 1, Road Town, Tortola, British Virgin Islands.

(collectively "**the Parties**")

**RECITAL:-**

(A)     The Lender has, at the request of the Chargor, agreed to increase the Facility to the Chargor, on the terms and conditions contained in a Supplemental Facility Agreement dated 28 August 2009 ("**Supplemental Facility Agreement**").

(B)     The parties had entered into a Debenture dated 18 May 2009 ("**Debenture**") pursuant to a Facility Agreement dated 18 May 2009.

(C)     Pursuant to the Supplemental Facility Agreement, the Parties agree to revise the Debenture in the manner described hereinafter.

**IT IS HEREBY AGREED** as follows:

1.     **DEFINITIONS**

        This Supplemental Debenture is supplemental to the Debenture and save as expressly amended, deleted or added to by this Supplemental

2

EXECUTION COPY

Debenture, the terms and conditions of the Debenture shall remain in full force and effect. The terms defined in the Debenture and the Supplemental Facility Agreement shall have the same meanings in this Supplementary Debenture unless otherwise provided for herein.

**2.    AMENDMENTS**

2.1    Clause 7 (viii) of the Debenture is hereby deleted and the following shall be substituted therefor:

"Change in ownership: any change occurs in the management, ownership or control of the Chargor or a significant portion of its assets, which in the reasonable opinion of the Lender constitutes a material adverse change affecting the financial condition or operations of the Chargor and that such change is neither approved nor initiated by the Preference Shareholder; or"

2.2    Clause 7 of the Debenture is hereby amended by adding the following sub-clauses thereto:

"(xvii): an order or decree by a court of law in the United States of America that Astrata Group Inc (the holding company of the Chargor) be liquidated;

(xviii): the removal or replacement of Anthony Harrison as Chief Executive Officer or of Martin Euler as Chief Financial Officer of the Chargor in the event either or both parties are so appointed by the Chargor;

(xix): any subsequent change(s) to the Articles of Association of the Chargor which diminish, remove or otherwise adversely affect the rights conferred on the Preference Shareholder;

3

(xx):   any proposed change in the Articles of Association which would result in the increase or decrease in the number of directors appointed to the board of directors of the Chargor; and

(xxi):  the removal or replacement of any director appointed by the Preference Shareholder without their consent. "

## 3.   ASSIGNMENT

3.1   This Supplemental Debenture shall benefit and be binding on the Parties, their permitted assignees and their respective successors.

3.2   The Chargor may not assign or transfer any of its rights or interests under this Supplemental Debenture.

3.3   The Lender may assign all or part of its rights or transfer all or part of its interests under this Supplemental Debenture without the consent of the Chargor. The assignee or transferee shall be and be treated as a party for all purposes of this Supplemental Debenture and be entitled to the full benefit of this Supplemental Debenture as it if were an original party in respect of the rights and interests assigned or transferred to it.

## 4.   Governing Law and Jurisdiction

This Supplemental Debenture shall be governed by and construed in accordance with the laws of Singapore.  The courts in Singapore have non-exclusive jurisdiction to settle any dispute arising out of or in connection with this Supplemental Debenture including disputes regarding the existence, validity or termination of this Supplemental Debenture.

(This space is intentionally left blank)

4

EXECUTION COPY

**IN WITNESS WHEREOF** the Chargor has caused its Common Seal to be hereunto affixed, and the authorised representative of the Lender has set his hand, the day and year first above written.

**THE CHARGOR**

The Common Seal of                      )
**ASTRATA (ASIA PACIFIC) PTE LTD**     )
was hereunto affixed in               )
the presence of:                     )

_____  DIRECTOR

_____  SECRETARY

**THE LENDER**

Signed by **MOHAN R. ABRAHAM**, Director    )
for and on behalf of **FAME TRADING LTD.**   )
the presence of:                           )

5

Dated this 28th day of August 2009

BETWEEN

**ASTRATA (SINGAPORE) PTE. LTD.**

as Chargor

And

**FAME TRADING LTD.**

as Lender

========================================================

**SUPPLEMENTAL DEBENTURE**

========================================================

**ABRAHAM**

Advocates and Solicitors

19 Keppel Road

#09-05, Jit Poh Building

Singapore 089058

EXECUTION COPY

THIS **SUPPLEMENTAL DEBENTURE ("Supplemental Debenture")** is made the 28th day of August 2009 **BETWEEN:-**

(A)    **ASTRATA (SINGAPORE) PTE. LTD.** (the "**Chargor**", which expression shall unless the context otherwise requires, include its successors and permitted assigns), a company incorporated in the Republic of Singapore and having its registered office at 135 Joo Seng Road #02-01, Singapore 368363; and

(B)    **FAME TRADING LTD.** (the "**Lender**", which expression shall unless the context otherwise requires, include its successors and permitted assigns), a company incorporated in British Virgin Islands and having its registered office at Akara Building, 24 De Castro Street, Wickhams Cay 1, Road Town, Tortola, British Virgin Islands.

(collectively "**the Parties**")

**RECITAL:-**

(A)    The Lender has, at the request of the Chargor, agreed to increase the Facility to the Chargor, on the terms and conditions contained in a Supplemental Facility Agreement dated 28 August 2009 ("**Supplemental Facility Agreement**").

(B)    The parties had entered into a Debenture dated 18 May 2009 ("**Debenture**") pursuant to a Facility Agreement dated 18 May 2009.

(C)    Pursuant to the Supplemental Facility Agreement, the Parties agree to revise the Debenture in the manner described hereinafter.

**IT IS HEREBY AGREED** as follows:

1.    **DEFINITIONS**

This Supplemental Debenture is supplemental to the Debenture and save as expressly amended, deleted or added to by this Supplemental

2

EXECUTION COPY

Debenture, the terms and conditions of the Debenture shall remain in full force and effect. The terms defined in the Debenture and the Supplemental Facility Agreement shall have the same meanings in this Supplementary Debenture unless otherwise provided for herein.

## 2.    AMENDMENTS

2.1    Clause 7 (viii) of the Debenture is hereby deleted and the following shall be substituted therefor:

"Change in ownership: any change occurs in the management, ownership or control of the Chargor or a significant portion of its assets, which in the reasonable opinion of the Lender constitutes a material adverse change affecting the financial condition or operations of the Chargor and that such change is neither approved nor initiated by the Preference Shareholder; or"

2.2    Clause 7 of the Debenture is hereby amended by adding the following sub-clauses thereto:

"(xvii): an order or decree by a court of law in the United States of America that Astrata Group Inc (the ultimate holding company of the Chargor) be liquidated;

(xviii): the removal or replacement of Anthony Harrison as Chief Executive Officer or of Martin Euler as Chief Financial Officer of the Chargor in the event either or both parties are so appointed by the Chargor;

(xix): any subsequent change(s) to the Articles of Association of the Chargor which diminish, remove or otherwise adversely affect the rights conferred on the Preference Shareholder;

3

EXECUTION COPY

(xx): any proposed change in the Articles of Association which would result in the increase or decrease in the number of directors appointed to the board of directors of the Chargor; and

(xxi): the removal or replacement of any director appointed by the Preference Shareholder without their consent. "

## 3.    ASSIGNMENT

3.1    This Supplemental Debenture shall benefit and be binding on the Parties, their permitted assignees and their respective successors.

3.2    The Chargor may not assign or transfer any of its rights or interests under this Supplemental Debenture.

3.3    The Lender may assign all or part of its rights or transfer all or part of its interests under this Supplemental Debenture without the consent of the Chargor. The assignee or transferee shall be and be treated as a party for all purposes of this Supplemental Debenture and be entitled to the full benefit of this Supplemental Debenture as it if were an original party in respect of the rights and interests assigned or transferred to it.

## 4.    Governing Law and Jurisdiction

This Supplemental Debenture shall be governed by and construed in accordance with the laws of Singapore. The courts in Singapore have non-exclusive jurisdiction to settle any dispute arising out of or in connection with this Supplemental Debenture including disputes regarding the existence, validity or termination of this Supplemental Debenture.

(This space is intentionally left blank)

EXECUTION COPY

**IN WITNESS WHEREOF** the Chargor has caused its Common Seal to be hereunto affixed, and the authorised representative of the Lender has set his hand, the day and year first above written.


**THE CHARGOR**

The Common Seal of                    )
**ASTRATA (SINGAPORE) PTE LTD**        )
was hereunto affixed in                )
the presence of:                       )


_____    DIRECTOR


_____    SECRETARY


**THE LENDER**

Signed by **MOHAN R. ABRAHAM**, Director    )
for and on behalf of **FAME TRADING LTD.**   )
the presence of:                             )

5